Case 18-1566, Singh Management Company LLC v. Singh Development Company Inc. Mr. Hamilton, you may proceed for the appellant. Thank you. Good morning, Your Honors. My name is Scott Hamilton, counsel for the appellant, and I would like to reserve five minutes of rebuttal time. Unless the Court has any different directions, I'd just like to jump right into the argument. I think it's a fairly narrow issue on appeal. This appeal concerns the implementation via a judgment of an award confirming an arbitral award. It's a little bit unusual in that both parties agree that the award was properly confirmed. Where the District Court erred, however, is in how it implemented the confirmation of that award in its judgment, and it specifically deals with the scope of the injunctive relief. Briefly, by way of history, the arbitrator in this case issued two different awards, one on January 17, 2017, in which he found that the trademark that was at issue would cause consumer confusion if the name Singh was used by itself. Was it really two different awards, or did he simply amend the original award and make some further clarifications? I think both of those propositions may be true, Judge Donald. There were two separate awards, the original dated 1-17-2017, the supplemental or clarifying award or amending award dated July 13, 2017. The specific reason that the arbitrator entered that, I'll call it second clarifying award, was because the parties, both sides, indicated to him that they were uncertain about what he intended in the scope of the injunctive relief that he was entering. As you know from the briefs, he asked the parties to submit proposed awards, which they did, tellingly, the Appellee's Proposed Arbitral Award specifically said that my clients could only use the Singh name if it was used in conjunction with their full names, Pargat Grewal Singh and Darshan Grewal Singh. That's the first award, right? That's the January 17th? Yeah. Well, the January 17th award said, for example, in his opinion, this would not be an infringing use, and it was because of that phraseology that my clients were left a little bit confused about what he was actually ruling and why both parties asked Judge Howard, the arbitrator, to clarify the scope of what he was intending. In doing that, he directed the parties to submit proposed awards, and the Appellee, in this case, submitted proposed awards that specifically said that my clients can only use the name Singh if it's used in conjunction with their full name. They submitted that twice, and both times the arbitrator said, that is not what my intention is, that is not what I am ruling. Well, did he actually say, that's not what my intention is, I'm rejecting that, or did he just, I mean, he just issued an award that your opponent would say is just, doesn't explicitly reject that narrow reading. Well, they want to say, or they do say, that it was more of a summary, or that it was a more general statement, which is a bit incongruous, because the entire exercise was to clarify what he intended. And what he intended, or what he wrote in the clarifying award, or the amended award, is not that my clients were restricted to using the Singh name only in conjunction with their first names, but instead said they can't use the Singh name unless it is associated with a distinguishing proper noun. So when he used their first names, you say, in that first order, he was giving an example of how this could be a non-infringing thing, and not limiting them to that specific idiom. Yeah, that specific idiom. And that phraseology, for example, is contained in that January 17th award. Wasn't it always clear that he was making a recommendation about what the actual equitable relief should be, and that the district court retained the jurisdiction to do it? Yes, that's true, Judge. So didn't the district court could choose to do whatever? I mean, as long as it was consistent with the rest of the award, he could fashion whatever relief he wanted to fashion, right? Not really. I don't think that's the case, Judge. This arbitration was conducted under the Michigan Uniform Arbitration Act, and that act specifically says in subpart C that an arbitrator has jurisdiction to clarify an award. Now, that gave him the authority to make the amendment and make the clarification. The question of whether he had the ability, whether the district court was bound by that statement of the injunctive relief, the scope of the injunctive relief or not, is answered with a couple of points. Number one, the parties agreed to it. By their conduct, the appellee participated in that process, giving the arbitrator what it viewed as the proper scope. The arbitrator... The appellee, even in their proposed order after the first award said, acknowledged again that the district court retained jurisdiction over the scope of the injunctive relief, right? Well, it certainly entertained jurisdiction over the entry of injunctive relief, and arbitrators certainly can't enter injunctive relief, so it would always be subject to confirmation and instantiation in a judgment. But I think, Judge, the point of your question is, was the district court necessarily bound by the limitation or the articulation of the injunctive relief that the arbitrator said he was providing? I think that's the intent of the point of the question. And if it is, I would say the answer is yes, because first, the arbitrator in that award specifically said, I am entering this clarifying award to enable the parties to go back to the district court and let the district court know exactly what I am finding by way of the injunction. I'm sorry, what happened between the original award says, I hope that the district court narrowly tailors this relief in conjunction with what I'm holding in the award, right? I mean, he specifically says, this is basically a recommendation. And then now you're saying in the clarifying award, admittedly, right, it says you are permanently enjoined, it seems to have mandatory language, although it also says this is for the use of the court. Right. So that seems to be kind of a recommendation in my mind. But what is key to me is the original award says, the arbitrator is still recognizing that, hey, I'm hoping you do something here, and I'm making a very strong recommendation. But it's still what it is, right? Well, I don't think it is, Your Honor. I think after January 17th, when that original order came in and the parties both said, arbitrator, we need some clarification on exactly what you mean, and both participated in that process, that's a tacit agreement to have the arbitrator arbitrate that issue. But you are acknowledging, aren't you, though, that the arbitrator didn't in and of itself have the ability to independently grant injunctive relief, that that had to be a part of the action of the district court to impose that, right? Sure. Just like in any other context, Your Honor, an arbitral award must be confirmed to enforce, execute, implement, that sort of thing. The arbitrator certainly doesn't have injunctive powers over anybody. But your argument is that by submitting to the arbitrator's ability to define the scope of injunctive relief, the arbitrator's decision on the scope of injunctive relief could only be overturned by the district court if it met one of the very narrow categories set forth in the FAA. That's exact. Or in this case, we talk about the FAA in our brief, as well as the MUAA, the Michigan Uniform Arbitration Act. They're really one and the same, except that the Michigan Arbitration Act specifically empowers an arbitrator to clarify an award. But your point, Judge Larson, is exactly right. More to the point, though, and if I could respond to both Judge Nadelbaum and Judge Larson's questions, I think at the same time, the district court, regardless of whether it was an advisory opinion from the arbitrator or not, the district court confirmed it. He accepted it. And he said in his opinion, I am confirming both the original award, the January 17 award, as clarified by the July 13, 27 award, quote, precisely as written. So the question of whether the district court was or wasn't bound by what the arbitrator found, I think becomes a bit of a moot point, given the district court's affirmative confirmation of both of those awards, precisely as written. But if that's right, then what happened? So you move to have the district court either confirm the judgment, conform the judgment, or for Rule 60, and the judge says, no, it's clear. Go away. Explain that. Explain what happened, or how did he get to that point? Well, I guess tell us what you think the district court meant when he turned you away. Your Honor, I could only hazard a guess because I think it was, with respect to the district court, rank error. Just a mistake. I think he just did not appreciate the fact that the original award and the clarification award were, in this very narrow aspect, fundamentally incompatible. That the form of judgment that he entered in intending to confirm the arbitral award, quote, precisely as written, did not faithfully implement the amendment that the arbitrator made very clear was his view of the proper scope of injunctive relief. Any further questions? You'll have your full rebuttal time. Thank you. Thank you, Judge. Good morning. Good morning. May it please the Court. I'm Rick Matthews here on behalf of Singh Management Company, the Appalee in this case. And this case is clearly one where the district court expressly reserved jurisdiction over all equitable claims of relief, consistent with the agreements between the parties. And those agreements governed that all equitable relief should be retained by the court. And that's specifically what happened here. And with regard to the question- You agree that you could waive, right? He can retain jurisdiction, but you could have waived that, right? I don't believe that we could have waived subject matter jurisdiction. Well, you can submit anything you want to the arbitrator, right? So can't you, by conduct, alter your agreement? I mean, arbitration is just a matter of contract, right? That's correct, Your Honor. However, I don't believe that there was a waiver here, because between the January order and then the second order, the parties submitted not requests for clarification on both sides. It was only the appellants that sought clarification. The order submitted by Appalese was actually an order written for Judge Friedman to sign. So it was directed to the federal court for the federal court to enter jurisdiction. This was not an order directed to the arbitrator, Judge Barry Howard. And so, at all times, the appellate, Appalese here, took the position that it was the district court that retained jurisdiction over all equitable claims. And we never waived that argument. And, in fact, this issue wasn't actually raised until appellants filed the reply brief, and in which case, since it wasn't raised in their initial briefs, it's therefore waived before this court. And that's the Marks v. New Court Credit Group, 342 F. 3rd, 444 case, 6th Circuit, 2003. So this waiver argument, if you may, where we submitted to the arbitrator's request to provide an order to the district court, was pursuant to the arbitrator's order. We're following the arbitrator's order. It's not that we... Yes, but if the arbitrator had ordered you to... If the arbitrator had said, we're here to define the scope of injunctive relief, and I'm going to issue an order on that, and you said, okay, here's what we propose as the scope of injunctive relief, this court would consider that a waiver or a modification of the contractual provision defining the scope of arbitration, right? This was after the fact. This was after the arbitrator had already issued the original award that... Right. ...exceeded the scope, quite frankly, of the jurisdiction. Well, then why didn't you object? Why didn't you say, if that's your position, that the original order exceeded the scope of the arbitrator's jurisdiction, why didn't you go to the arbitrator and say, hey, that exceeds the scope of your jurisdiction? We didn't see it as creating any harm or foul, given that this issue was going to be taken up by the federal court, and that's precisely what we asked the judge, the arbitrator, at that point to do. I'm sorry. So you asked the... When you say we asked the arbitrator to do what? So the arbitrator, your position is the initial order exceeded the scope of the jurisdiction. That's the January order. Correct. You didn't say, hey, arbitrator, you don't have any business defining the scope of injunctive relief. No, because at that point there was a consolidated action, one for the shareholder action and then a separate action for the trademark portion. And that portion, the only reason we wanted that excised out is to avoid confidentiality issues in submitting that to the district court. We ultimately had to go through the process of filing a motion to seal all the documents at the federal court so that the federal court had access to not just the second June order, but also the primary January 17th order. So the parties both did not submit to the arbitrator a request for clarification. Only the parents did. We were ordered through that process to participate and provide a more narrow order only relating to the trademark issues so that only those issues that went to the federal court would be addressed in that respect. But I guess I still don't understand why in that second round when the arbitrator orders you to submit an order concerning the scope of injunctive relief, you didn't say, well, okay, we're going to do that, but you don't really have authority and we object. Well, that's why we framed the proposed order under signature for the district court, the federal court. And so if you look at our proposed orders, they both in each instance were for Judge Friedman at the federal court to sign. Which way does that cut? So you're saying to the arbitrator, here's a proposed order that would be signed by the district court, so aren't you saying we want him to be bound by what you do? We're agreeing that the district court's going to be bound because we're giving you a proposed order for his signature. Right, because there's underlying factual determinations within the scope of what is permitted and what's not permitted. And it's our position that these two are not inconsistent. Quite frankly, if you read them together, as Judge Friedman did, you've got an initial what they cannot do, and that's using only their identifying name. And then the second portion is permitted for only use of defendant's name in conjunction with their full names. But now you're talking about the substance of the order. You're not talking about whether or not the arbitrator had the authority to define the scope of injunctive relief, to craft essentially injunctive relief that then Judge Friedman would embody into law through the force of a district court order. No, but there were underlying factual determinations on what would infringe and what would not infringe. And you thought the district court should make those, not the arbitrator. You weren't submitting those to the arbitrator? They were already ruled by the arbitrator before. And I just want to go back to something just kind of basic. In this case, didn't the arbitrator ask both sides to submit the equivalent of proposed findings and conclusions in actually a draft order? Didn't he ask each of you to do that? And then from those things, the arbitrator crafted the relief that he put into the award, correct? That's correct. Okay, so I want to go back again to this question that Judge Larson posed before. If you thought that you're being asked to draft these proposals, but you have remained mute regarding your concern that the arbitrator is exceeding the scope of authority in one situation. So why doesn't that prejudice, I mean, why shouldn't that cut against you? I believe it doesn't cut against us because it has to be one portion of determination of the fact of what infringes and what does not infringe. And that is a determination that was squarely within the scope of the arbitrator's rights and duties. What to be determined once you have a finding of ownership and then a finding of infringement, the relief to be sought is then solely within the jurisdiction of the federal court to decide. And that's why when asked by the arbitrator to submit a separate award, because these were bifurcated actions that ultimately ended up in a consolidated award. That was the January award. The parties were concerned, among other issues, for the confidentiality of a number of financial terms in the award and wanted to separate out the two awards since they were going in different directions. The shareholder suit was going to state court and the trademark portion was going to federal court. And that was the only position that we took with the arbitrator and that the arbitrator consistently recognized that this was for the district court to decide. And it was recognized by the arbitrator's clerk in a direction to the parties where the arbitrator on May 16, 2017, and this is in Record 70, Exhibit 15, they wanted orders that only addressed the rulings made in the arbitration award. So what the district court could thereafter take and fashion into injunctive relief. So why shouldn't this matter go back to the district court for the district court to clarify what action the court took, what the court meant, and all of that? I know you're opposing the relief sought by the appellants, but why shouldn't this be for the district court to clarify? Because I don't think the order requires any clarification. You think it's clear? I believe it is clear, Your Honor. It covers both what the party, the appellants, cannot do, and that's the first portion of the order. Parties are enjoined from using the word seeing in any of their business names as the only identifying name. That's what they cannot do. And then the second portion of that order reads what they can do is use the word seeing as a business name, provided the name is used as a surname given to defendants in conjunction with their full name. What about the one individual that the arbitrator thought shouldn't be enjoined that the district court enjoined? I don't believe the district court did enjoin that one individual. The district court enjoined all remaining defendants. But he wasn't dismissed. He was dismissed by the arbitrator. But not by the district court. The district court no longer had jurisdiction over this individual because he was dismissed by the arbitrator. The district court recognized that in addition to Mr. Takkar, the individual who was dismissed. But I thought you told us earlier that the actions of the arbitrator had to be confirmed by the district court. But you're saying that portion of it didn't have to be confirmed. I believe it was confirmed because the court said all defendants. So the only remaining defendants were the defendants of record. Mr. Takkar was not of record at that time. So he's free to do whatever he wants? Except for the fact that the businesses, and there were two businesses that he was associated with that are remaining defendants. Singh Mortgage Group and Singh Building Company were remaining defendants. Mr. Takkar could start another business and name it whatever he wants? That's not true because that would be a new act, and that new act would constitute infringement. So if he did start a new business, that stands on its own as being. . . But he wouldn't be barred by the current injunction? The current injunction wouldn't bar him. So no, he would not be in contempt. That's correct. However, it would force us to file a new trademark action. That's correct. So in any regard. . . So I think this issue with regard to Mr. Takkar is one where as he stands alone, he is dismissed from the case. But to the extent he is involved. . . I'm sorry to interrupt. So is the dismissal, is that consistent with what the arbitrator awarded with respect to him? Correct. So the district court's finding that all defendants being joined are only the remaining defendants in the action. There were other parties that were settled out of this case, and they weren't specifically dismissed from the district court action, but they were included or excluded within the definition of defendants once the final award from Judge Friedman was entered, and that's what's up here on appeal. So there were a number of defendants that were no longer a party to this action. So two in addition, Top Flight Financial and Timothy Bays, were originally defendants. They settled out of the case, but they weren't specifically excluded from the judge's final award any more than the judge would exclude Renu Takkar, who is the defendant named by the arbiter, as being dismissed. And so for this point, he stands in his individual capacity as a dismissed party, but as far as he's wearing his hat representative of other defendants, Singh Building Company Inc. and Singh Mortgage Group, then he is bound to be enjoined through his activities associated with those entities that did remain defendants. And so under the abuse of discretion standard, both in reviewing a Rule 5090 and Rule 60 standard, we believe that this case can be affirmed on appeal. Any further questions? Judge? Thank you. Thank you. Mr. Hamilton, you have your five minutes of rebuttal. Thanks, Judge. I'll try to be brief. I don't know that I'll need to use all of it, but I want to address a couple of points that were raised, especially by some questions from Judge Nalbandian and Judge Larson. First of all, with respect to the question of their participation, making that at a tacit agreement, we make that argument in our apply brief, that they participated in that arbitral process and therefore agreed to be bound by the arbitrator's order, the supplemental or clarifying award on arbitration. Although not cited in our brief, Kamikaze Music Court v. Robin Music, 684 Fed 2nd, 228, simply said, it is Hornbook law that parties by their conduct may agree to send issues outside an arbitration clause to arbitration. That's a simple proposition of arbitration law, that when by your conduct you tacitly agree to have an issue arbitrated and you allow an arbitrator to do it, it is essentially an agreement to arbitrate, and that sweeps it within the federal arbitration. What is it exactly that they did? It's the conduct after the January award, before the clarifying award. The one filing, the proposed order, is that what the waiver is? Two filings, Judge. They twice submitted proposed orders that had this language that talked about only being able to use the same name with the names Parget and Darshan Singh associated with them. They twice submitted that to the arbitrator. Can I just clarify, once before the January award and once before the Lamarck award? The clarifying award. June, July, I forget, July? July 13th. The once before January, once before July. I believe that they were both before the July award. Okay. I believe that to be the case. I reserve the right to be mistaken on my recollection, but I think certainly they proposed that before the clarifying award. In any event. But, I mean, that seems to have to carry a lot of weight here. Didn't the arbitrator say, even in correspondence in May, something like, if you want relief, you have to request it from the federal court? That was an email he sent, right, or his staff? You're talking about the arbitrator, Judge? Yeah. Well, he said, I believe what you're referring to, if we're talking about the same document, I think he said that the district court would ultimately have to implement relief in order of confirming the arbitration. But certainly, by the time they got the stipulated order with the arbitrator, where he issued the July 13th clarifying order, the order itself specifically said, and I'm quoting from his award, The purpose of this order, or the order, is to permit the parties to present the rulings of the arbitrator on the trademark issues for use by the federal court in entry of a judgment in the trademark proceeding. Having reviewed and considered the proposed orders, that is the proposed orders that both parties supplied, including the appellee in this case, the arbitrator's opinion and award, and the arbitrator otherwise being fully advised in the premises, and then he lists the scope of the injunction, which is to the trademark defendants, appellates in this case, are permanently enjoined and restrained from using the name Singh alone as the only identifying proper noun used to describe their business. But he originally said, the arbitrator finds that the injunctive relief to be granted by the federal court should be tailored narrowly to permit plaintiff's use, blah, blah, blah. So in the award he says, when you do this, I'm saying you should do this narrowly tailored to do this. And then he issues the clarifying award that's for the use of the federal court. I'm not sure the arbitrator here ever thought that the federal court was going to be bound by what he did. It's entirely consistent with what everybody was saying, which was the district court retains jurisdiction from the beginning, which is what the parties had agreed. And you're saying all of that is out the window because of the one thing that they put in the record that looks like an order? No, no, I don't think it's out the window. I think all of those statements and that conduct are entirely consistent with what happened. The parties were asked by the arbitrator to submit proposed orders, essentially proposed findings of fact by analogy, which they did. The ones that the appellees in this appeal submitted, the arbitrator didn't accept. And he implemented it as described in his July 13th order. Now, the arbitrator, pursuant to the stipulation of the parties, expressly said, I'm doing this so you can go back to the district court with this language to implement a judgment, which obviously has to be done to make it effective. The underlying point, though, is the district court agreed and said in his order confirming the arbitration that I am going to enter, confirm the awards precisely as written, including, and these are his words, including as clarified by the July 13, 2017 award. So your argument is that the district court just didn't know what he was doing when he entered the judgment. And not only that, but he didn't know what he was doing when he rejected the 59E and the Rule 60. I mean, at some point you go back to the judge and say, hey, look, we think you made a mistake because you said precisely as written, but this doesn't look like it's precisely as written. And he says no. So he speaks through his judgment, right? And if he had the discretion and the jurisdiction to enter the relief, then why isn't that just the end of the case? Mr. Hamilton, I'm going to ask you to narrowly tailor your answer. I will. I will because it was simply error. It was error that he left uncorrected. We thought if we put it to him in the form of a motion to alter or amend, we could point that out. And we got a one-sentence order denying the motion without explanation or reason, which is unfortunately why we are here on appeal. I don't know that it needs to be remanded with instructions. We have a proposed order at the end of our brief, or I'm sorry, proposed judgment, that I think faithfully implements what the arbitrator awarded. And we would ask. It's an offer of assistance, but I think we got it. Okay, thank you. Is there anything further for this? No? Judge Melbania? Thank you, sir. Thank you. Thank you.